UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| VICTOR L. JORDAN. SR., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:24-cv-204 (VAB) |
| | : | |
| CHIAROO, ET AL., | : | |
| *Defendants*. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Victor L. Jordan, Sr. ("Plaintiff"), a sentenced inmate,[1] has filed a *pro se* Complaint under 42 U.S.C. § 1983. He names six defendants, Mail Supervisor Chiaroo, Head Mail Clerk Mary, Anthony Sariani, Counselor King, Officer Edge, and Property Officer John Doe. Mr. Jordan alleged that the defendants have tampered with his legal mail and legal documents. He seeks "some form of compensation" but does not know what type of relief, injunctive, declaratory, or damages, would be appropriate. Compl., ECF No. 1 at 6.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§

---

[1] Information available on the Department of Correction website shows that Mr. Jordan was sentenced on December 5, 2008, to a term of imprisonment of eighty-one years. *See* www.ctinmateinfo.state.ct.us/detailsupb/asp?id_inmt_num=165080. The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

1915(e)(2)(b), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein under 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

Mr. Jordan's Fourteenth Amendment claim for deprivation of property and his First Amendment claim for interference with legal mail based on the open letter from the Claims Commissioner, i.e., the claims against defendants Chiaroo, Mary, Edge, and Property Officer John Doe are DISMISSED with prejudice under 28 U.S.C. § 1915A(b)(1). The First Amendment claims for denial of access to the courts and interference with legal mail regarding Notices of Electronic Filing ("NEFs") are DISMISSED without prejudice under 28 U.S.C. § 1915A(b)(1).

If Mr. Jordan wishes to attempt to replead his claims for denial of access to the courts and interference with legal mail regarding delivery of NEFs in order to attempt to state a viable claim, he may file an Amended Complaint by **May 10, 2024**.

An Amended Complaint, if filed, will completely replace the Complaint and the Court will not consider any allegations made in the Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.

If Mr. Jordan elects to file an Amended Complaint, the Complaint this Initial Review Order addressed will not proceed to service of process on any defendant. Mr. Jordan may not, however, include in the Amended Complaint any claims that have been dismissed with prejudice.

If no Amended Complaint is filed by **May 10, 2024**, the Clerk of Court is directed to close this case.

I.     **BACKGROUND**[2]

On various occasions, correctional staff has allegedly tampered with Mr. Jordan's legal mail or documents. Compl. ¶ 1. Mr. Jordan allegedly has documented such tampering on August 16, 2022, October 25, 2022, November 21, 2022, December 14, 2022, October 6, 2023, and February 6, 2024. *Id.* ¶ 3. He contends that officers or counselors Torres, Crespo, King, and Sariani were responsible for handling legal mail and e-filing receipts on those dates. *Id.* ¶ 4. Specifically, in October 2023, Counselor King allegedly told Mr. Jordan that she would not e-file his complaint which included claims against her and her colleagues. *Id.*

Mr. Jordan alleges that, since November 2023, Sariani has been responsible for delivering Mr. Jordan's e-filing receipts. *Id.* ¶ 5. Mr. Jordan allegedly has not been receiving notices from the court or, when he does, they are included with regular mail, not legal mail. *Id.*

On November 16, 2023, correctional officers allegedly delivered an opened notice from the Claims Commissioner with Mr. Jordan's regular mail. *Id.* ¶ 7. Mr. Jordan allegedly returned the notice without reading it and instructed the officers to call their supervisor. *Id.* The following day, Unit Manager Calo allegedly told Mr. Jordan that an incident report had been filed that that he could obtain a copy of the report by submitting an F.O.I. request. *Id.* ¶ 9. Mr. Jordan alleges that he was on grievance restriction so could only file an inmate request regarding this incident. *Id.* ¶ 10.

On June 27, 2022, Mr. Jordan allegedly was transferred from Cheshire Correctional Institution to Garner Correctional Institution. *Id.* ¶ 13. At that time, he allegedly had four boxes of legal work for pending cases. *Id.* The legal boxes allegedly arrived at Garner Correctional Institution and were placed in storage by Property Officer Doe. *Id.* ¶ 14. When Mr. Jordan was

---

[2] For purposes of initial review, the Court considers all of the following allegations to be true.

transferred from Garner Correctional Institution to Corrigan Correctional Center on May 23, 2023, he allegedly was told by the transportation officer that all of his property was on the bus. *Id*.

The following day, Mr. Jordan allegedly was told that at least four boxes containing his recent civil legal work was there, but his criminal case materials were not. *Id*. ¶ 15. Edge allegedly told Mr. Jordan that he would look into the matter. *Id*. ¶ 16. On June 19, 2023, Mr. Jordan allegedly submitted an Inmate Request to Edge regarding his property but received no response. *Id*. ¶ 17.

Mr. Jordan allegedly was placed in restrictive housing from June 26, 2023 until July 1, 2023. On July 3, 2023, he allegedly went to the property room to retrieve his property and again asked about his legal work. *Id*. ¶ 18. Mr. Jordan allegedly filed a second inmate request regarding his legal work on July 10, 2023, but received no response. *Id*. ¶ 19. Mr. Jordan allegedly was placed on grievance restriction on August 24, 2023. *Id*.

On November 3, 2023, Mr. Jordan was allegedly returned to Cheshire Correctional Institution. *Id*. ¶ 20. He alleges that part of his property was transferred with him, and the remainder was to follow. *Id*. When Mr. Jordan accessed his property on November 6, 2023, his legal work was not there. *Id*. When the remainder of Mr. Jordan's property arrived on November 9, 2023, his "legal work boxes," his wedding band, and other miscellaneous items were missing. *Id*.

Mr. Jordan alleges that Cheshire Mail Room Supervisor and Head Mail Clerk Mary are responsible for sorting and processing inmate mail. *Id*. ¶ 22.

## II. DISCUSSION

Mr. Jordan asserts several claims for violation of his First and Fourteenth Amendment rights concerning his legal mail and property. He alleges, that e-filing receipts were not delivered to him, Counselor King refused to e-file a complaint for him, mail from the Claims Commissioner was delivered to him opened, and his legal and miscellaneous property was lost in transport.

The Court will address each claim in turn.

### A. The Fourteenth Amendment Lost Property Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property[.]" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). When the claim is based on the deprivation of property, the Supreme Court has held that the crucial requirement is that the plaintiff was deprived of his property without due process of law. *See Parratt v. Taylor*, 451 U.S. 527, 537 (1981). If a pre-deprivation hearing is impracticable, a state-authorized post-deprivation hearing that offers a full and meaningful hearing for the plaintiff will satisfy the requirements of due process. *See id*. at 541; *see also Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (prisoner cannot state due process claim for lost property if the state has created adequate post-deprivation remedies).

Jordan alleges that items of his personal and legal property were lost when he was transferred between correctional facilities.

But Connecticut provides a remedy for individuals claiming unauthorized deprivations of property by state officers. *See, e.g., Sherman v. Corcella*, No. 3:19-cv-1889 (CSH), 2020 WL 4043178, at *17 (D. Conn. July 16, 2020); *Longmoor v. Nilsen*, 329 F. Supp. 2d 289, 302 (D. Conn. 2004). Specifically, Connecticut General Statutes, Section 4-141, et seq., provides that a

person may bring a claim against the Connecticut Claims Commissioner. In addition, Department of Correction Administrative Directive 6.10(37) provides that inmates can submit lost property claims at the correctional facility. The Second Circuit has held that Connecticut's post-deprivation remedies for lost property satisfy the constitutional requirement. *See Riddick v. Semple*, 731 F. App'x 11, 13-14 (2d Cir. 2018) (finding that Connecticut's remedy for prisoner's lost property claims allowing prisoners to "file a claim with the [DOC Lost Property] Board, and, if it is denied, subsequently file a claim with the [Claims Commissioner], which may order relief or authorize suit" was constitutionally adequate).

As Connecticut has adequate post-deprivation remedies, Mr. Jordan cannot state a plausible Fourteenth Amendment due process claim.

Accordingly, any Fourteenth Amendment claims related to his alleged lost property are dismissed with prejudice.

### B. The First Amendment Denial of Access to the Courts Claim

To state a claim for denial of access to the courts, Mr. Jordan must assert non-conclusory allegations showing both that Defendants acted deliberately and maliciously, and that he suffered an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996). Mr. Jordan must allege that Defendants took, or were responsible for, actions that frustrated his efforts to pursue a nonfrivolous legal claim. *Id.* Mr. Jordan must allege facts showing that a prison official "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D.N.Y. 2010); *see also Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001) (inmate may show actual injury "by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality").

This actual injury requirement "is not satisfied by just any type of frustrated legal claim."

*Lewis*, 518 U.S. at 354. The Supreme Court has restricted the types of claims to direct appeals of criminal convictions, habeas petitions, and "civil rights actions—i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" *Id*. (citation omitted). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original).

"Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost ... plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court. *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002).

Mr. Jordan contends that the failure to promptly deliver the NEFs from the court, the delivery of one item of mail from the Claims Commissioner that had been opened outside of his presence, and Counselor King's refusal to electronically file a complaint violated his First Amendment right of access to the courts. But Mr. Jordan must identify the claim he was prevented from filing.

Mr. Jordan alleges that Counselor King refused to electronically file a complaint for him. He does not indicate what claims he intended to pursue against Counselor King or her colleagues in that complaint. Thus, as "the underlying cause of action ... is an element that must be described in the complaint," *Christopher*, 536 U.S. at 415, Mr. Jordan fails to state a plausible claim for denial of access to the courts regarding his claim against Counselor King.

Further, Mr. Jordan alleges that Counselor King refused to file the complaint in October 2023. However, he alleges that he was transferred to a different correctional facility on November 3, 2023. Mr. Jordan does not allege that he attempted to refile the complaint after his

transfer and court records indicate that, although Mr. Jordan has filed five cases,[3] in addition to this case, since his transfer, there is no claim against Counselor King in any of them. Thus, it appears that Mr. Jordan could have refiled his complaint after his transfer but chose not to do so.

Similarly, Mr. Jordan has not alleged facts showing that his suit against the Claims Commissioner was adversely affected by the delivery of the notice that had been opened or that any cases in which he failed to receive NEFs in a timely manner were adversely affected. Although Mr. Jordan has attached to his complaint copies of notice he filed in various federal lawsuits complaining about the failure to timely receive NEFs, he does not allege that any case was dismissed or that he was not afforded additional time to respond to motions or orders of which he was unaware. And although Mr. Jordan's litigation efforts may have been delayed, a delay in litigation does not constitute an actual injury under *Lewis*. *See Lebron v. Armstrong*, 289 F. Supp. 2d 56, 61 (D. Conn. 2003) ("[Inmate's] assertion of delay in litigation does not constitute an actual injury under *Lewis*.").

Accordingly, Mr. Jordan has failed to plausibly allege a claim for denial of access to the courts, and this claim will be dismissed. *See Green v. Caron*, No. 3:22-CV-01397(KAD), 2023 WL 1862950, at *6 (D. Conn. Feb. 9, 2023) (dismissing access to courts claim as not plausibly alleged where plaintiff failed to show that his efforts to pursue a nonfrivolous claim were hindered).

**C. The First Amendment Interference with Legal Mail Claim**

The First Amendment protects an inmate's right to send and receive legal mail and social correspondence. Legal mail is entitled to greater protection, however, from official interference.

---

[3] *Jordan v. D.O.C., et al.*, No. 3:24-cv-236(VAB) (filed February 21, 2024); *Jordan v. D.O.C., et al.,* No 3:24-cv-227(VAB) (filed February 22, 2024); Jordan v. Martin, et al., No. 3:24-cv-251(VAB) (filed February 23, 2024); *Jordan v. D.O.C., et al*., No. 3:24-cv-259(VAB) (filed February 26, 2024); and *Jordan v. Correction, et al.*, No. 3:24-cv298(VAB) (filed March 4, 2024).

*See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail . . . ."); *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974) (prisoner has a right to be present when his legal mail is opened). Despite these protections, "[a] single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge." *Abreau v. Travers*, No. 9:15-CV-540(MAD/ATB), 2016 WL 6127510, at *10 (N.D.N.Y. Oct. 20, 2016); *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) ("With regard to legal mail, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."). The prisoner must show that prison officials "regularly and unjustifiably interfered with incoming legal mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks and citation omitted).

Mr. Jordan's complaint can be construed as asserting two distinct claims for interference with legal mail: (1) a claim that legal mail from the Claims Commissioner was opened outside of his presence on one occasion; and (2) a claim that NEFs, which are sent to the correctional facility electronically and are not received in an envelope, were not timely delivered.

But Mr. Jordan alleges only one incident where legal mail was opened outside of his presence. As he does not allege that he suffered any damage from this incident, he fails to state a plausible claim for interference with legal mail against defendants Chiaroo and Mary.

Mr. Jordan's second claim is for multiple delays in delivering NEFs. The First Amendment right to the "free flow" of incoming legal mail is violated if a prison "regularly and unjustifiably" interferes with an inmate's legal mail. *Ahlers,* 684 F.3d at 64 (quoting *Davis,* 320 F.3d at 351) (two incidents of mail tampering might state First Amendment claim "if the

9

incidents suggested an ongoing practice of censorship unjustified by a substantial government interest") (citation omitted)). Here, Mr. Jordan only alleges that the delayed delivery interfered with his access to the courts. As discussed above, Mr. Jordan fails to identify an actual injury, however, caused by the failure of defendants King and Sariani to timely deliver his NEFs.

Accordingly, this claim is dismissed without prejudice. *See Viera v. Lepkowski*, No. 6:17-CV-06844 EAW, 2022 WL 138540, at *6 (W.D.N.Y. Jan. 14, 2022) (dismissing claim for interference with legal mail for failure to identify actual injury, not merely delay in communicating with court, caused by interference with legal mail).

### III.  CONCLUSION

Mr. Jordan's Fourteenth Amendment claim for deprivation of property and his First Amendment claim for interference with legal mail based on the open letter from the Claims Commissioner, *i.e.*, the claims against defendants Chiaroo, Mary, Edge, and Property Officer John Doe are **DISMISSED** with prejudice under 28 U.S.C. § 1915A(b)(1). The First Amendment claims for denial of access to the courts and interference with legal mail regarding NEFs are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1).

If Mr. Jordan wishes to attempt to replead his claims for denial of access to the courts and interference with legal mail regarding delivery of NEFs in order to attempt to state a viable claim, he may file an Amended Complaint by **May 10, 2024.**

An Amended Complaint, if filed, will completely replace the Complaint and the Court will not consider any allegations made in the Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.

If Mr. Jordan elects to file an Amended Complaint, the Complaint this Initial Review

Order addressed will not proceed to service of process on any defendant. Mr. Jordan **may not**, however, include in the Amended Complaint any claims that have been dismissed with prejudice.

If no Amended Complaint is filed by **May 10, 2024**, the Clerk of Court is directed to close this case.

SO ORDERED.

Dated this 5th day of April 2024 at New Haven, Connecticut.

                                          /s/ Victor A. Bolden  
                                        Victor A. Bolden  
                                        United States District Judge